STATE OF MAINE                     SUPERIOR COURT
HANCOCK, SS.                       CIVIL ACTION
                                   Docket No RE-05-31
                                   JLH - HAN - 10/15/2007

James P. Miller,
        Plaintiff


        v.                         Order (Motion for Entry of Judgment;
                                   Motion to Cancel ADR Agreement)


William R. King,                   DONALD L. GARBRECHT
        Defendant                            LAW LIBRARY

                                           JAN 30 2008

A consolidated hearing on the parties' cross-motions was held on August 8, 9 and

16, 2007. On all three hearing dates, both parties were present. The plaintiff appeared

with counsel, and the defendant represented his own interests. The essential questions

raised by the parties' motions are whether the arbitration award should be confirmed and,

if so, whether the parties are now obligated to perform pursuant to the arbitration

agreement.[1] For the reasons set out below, the court answers both questions in the

affirmative.

In order to settle the dispute embodied in this action, the parties entered into an

arbitration agreement. *See* plaintiff's exhibit 1. As one component of that agreement, an

arbitrator would appraise certain valuation aspects of the house and land that are the

---

[1] The defendant, William R. King, filed the latter motion. In fact, he filed several
motions to "cancel" the ADR agreement. In a scheduling order dated April 2, 2007, the
court referred to the King's motion. The plaintiff, James P. Miller, filed an objection to
the last of King's motions after the 21-day response period had ended because, as his
attorney argued, he (counsel) did not receive a copy of that final motion. King argues
that the April 2 order must have put Miller on notice of his motion. However, because
King had filed several similar motions, the reference in the April 2 motion would not
have alerted a reader to another such motion. Because the court accepted counsel's
explanation that he did not receive King's last motion, and because Miller, through
counsel, had already responded to the issues that King raised in it, the court declined to
default Miller.

1

subject of this proceeding.[2] Also pursuant to the parties' agreement, that information would be included in a larger formula used to determine the amount of money for which Miller could purchase the property from King. One of the appraisers the parties agreed to consider was Jerome Suminsby. In connection with a dispute arising from the selection process, the parties advised the court in written submissions that of the numerous appraisers they had solicited, Suminsby was the only one willing to perform the appraisal work. King objected to the appointment of Suminsby, however, because he believed that Suminsby was "tainted" by exposure to information that King contended was prejudicial. The parties presented their dispute to the court through standard motion practice. (Under the arbitration agreement, court adjudication was one of the methods they agreed could be used to select an appraiser.) The court considered the parties' positions, including the basis for King's contention that Suminsby was "tainted," and appointed Suminsby to perform the appraisal work.

Suminsby did so and issued a valuation report in late November or mid-December 2006. *See* plaintiff's exhibit 3; *see* note 3 *infra*. Miller has moved for confirmation of the decision, and King opposes it. Confirmation and enforcement of the award is subject to the Maine Uniform Arbitration Act, *see* 14 M.R.S. § 5927 *et seq*. The grounds on which an arbitration decision may be vacated are set out in section 5938. None of those grounds has been established here. Although King disagrees with Suminsby's methodological approach and ultimate conclusion, those challenges do not amount to "corruption, fraud or other undue means, *see* 14 M.R.S. § 5938(1)(A), and they do not reveal "evident partiality. . .or corruption. . .or misconduct. . .," *see* 14 M.R.S. § 5938(1)(B).

King has alleged that Suminsby has a personal relationship with Miller or members of his family. That allegation, however, has been shown to be baseless. King also claimed (as he did when he opposed Suminsby's appointment in the first place) that Suminsby was improperly influenced by certain material about the property that Miller's attorney sent to him. In fact, the arbitration agreement required Miller to provide the

---

[2] In their agreement, the parties charged the appraiser to determine the increase in the property's fair market value between June 1, 2004, and the date of the appraisal; and the amount that the property would have appreciated without improvements that Miller made to the property.

appraiser with information about improvements that he had made to the property while he was in possession of it, after providing that information to King for his consideration. *See* plaintiff's exhibit 1. Miller, through his attorney, followed that procedure and provided that information (including King's comments) to Suminsby. *See* plaintiff's exhibit 2. King objected to Suminsby's appointment, claiming that a couple of the photographs included in that material showed members of Miller's family and in some way would make Suminsby sympathetic toward Miller. Suminsby testified that he was not affected by those photographs, and the court's review of them, included in plaintiff's exhibit 3, demonstrate clearly that they are innocuous and would not influence an appraiser's analysis. Finally, there is no legitimate basis on which to argue, as King has, that Suminsby would be influenced favorably toward Miller simply because Miller's attorney paid Suminsby's initial charge, rather than to pay half of that retainer and then allow King's attorney to send the other half directly to Suminsby.

King's challenges to Suminsby and his report are made even more hollow because of King's own conduct during the appraisal process. The arbitration agreement authorized King to try to sell the property on the open market, so long as Miller's claim to the property was disclosed to possible buyers. In fact, King engaged in those efforts to sell the property and listed it with a local real estate agency. The listing price was well in excess of the value assigned by the Suminsby. The arbitration agreement provided, however, "<u>The appraisers consulted and the appraiser selected for this ADR also is not to know the asking price on the marketing of the property.</u>" *See* plaintiff's exhibit 1 (emphasis in original). Despite this clear restriction – to which King agreed --, he communicated to Suminsby the listing price, as King's former attorney testified. He did so without advising anyone else in a timely way of that communication. King's own attorney did not find out until Suminsby disclosed it to him well after King had made that contact. As it turned out, Suminsby did not receive this information until after he had arrived at the opinions he ultimately provided to the parties, so there can be no claim *by Miller* that Suminsby was improperly influenced by this contraband information. Nonetheless, as King's former attorney described it, he (counsel) had advised King not to provide the listing information to Suminsby because of the restriction in the agreement, but King did so anyway. King later explained that the listing price was public

3

information and that he thought the appraiser would obtain that information anyway. The contractual restriction against that disclosure, particularly when Suminsby was provided with a copy of the agreement, makes King's explanation not credible. For the reasons set out below in more detail, the better explanation for King's decision to defy his attorney's advice and provide Suminsby with information in derogation of the agreement is that King was attempting to subvert the resolution process.

The court therefore concludes that Suminsby's arbitration decision should be confirmed. The next question is whether the parties are bound to perform under their agreement.

The parties' agreement created a timetable for a closing when Miller would be entitled to acquire the property from King. The instrument established several alternative deadlines for the closing date as a function of the amount of the purchase price. That price, in turn, was influenced by Suminsby's opinions. Once the parties received Suminsby's report, they needed to obtain additional information, such as municipal tax data, from available sources to finalize a closing statement. The parties' agreement provided, "Time is of the essence." Under the timeframes set out in the contract, the closing was to occur within 30 days of the date of the report, or by mid-January 2007.[3] The closing has not been held yet. King argues that the delays relieve him of his obligation to perform under the contract.

After the parties' attorneys received Suminsby's report, they communicated with each other to address specific figures that were to be included in the settlement statement and that would be used to determine the specific amount that Miller would pay to King. Miller also provided funds to his attorney, which then were deposited into the law firm's trust account. Those funds (roughly $104,000) were more than adequate to cover the purchase price, even though the specific amount of consideration had not yet been calculated. Miller's attorney, Thomas Wheatley, unilaterally scheduled a closing date of December 28. It turned out that that date was not possible for King or his lawyer due to

---

[3] Suminsby's report itself is dated November 24, 2005. Suminsby issued a final invoice dated December 12, 2006. From various emails admitted into evidence, it appears that the parties used the December 12 date as the beginning of the 30-day closing period. The evidence reveals more generally that December 28 was within the 30-day period, and January 31 was beyond it.

4

their personal schedules. In early January, King directly emailed Wheatley or his law partner, Douglas Chapman, and explained the reason for his unavailability on December 28 and, in another email sent a couple of days later on January 7, proposed a closing date of January 31. That date, however, was subject to conditions that King imposed. Even the January 31 date was beyond the 30 days allowed by the contract, and so, upon King's own request, time was no longer of the essence.

When King proposed a January 31 closing date, he did so contingent on a formulation of the ultimate purchase price agreeable to him and on the selection of a closing agent also agreeable to him. Wheatley and King's attorney had also communicated about a couple of other financial matters, such as whether interest would accrue subsequent to the time when Miller had been prepared to close in late December and whether interest would be calculated on a simple or compound basis. These issues were ultimately resolved after King came to represent himself, mostly by Miller's agreement to King's position simply because Miller wanted to move the process forward. Wheatley provided King's counsel and then, subsequent to his withdrawal, King himself with several sets of calculations, getting little in the way of responses, despite requests for King's proposed figures.

Wheatley and others from his firm also repeatedly asked King to provide financial information that sellers customarily provide, such as real estate tax information, which was to be used in determining the amount that Miller would pay King. King did not provide that information, and Wheatley's staff eventually contacted the town directly to obtain in. This caused a delay, attributable to King. Also, because King wanted a "neutral" closing agent, Wheatley's office asked him to select someone that would be satisfactory to him. At King's request, a member of Wheatley's staff suggested the names of several attorneys in the Hancock County area – with assurances that none of them had been contacted in advance about the matter --, but even to this date, King has never chosen anyone. This also caused a delay.

In the end, the court finds that by having fulfilled his responsibilities under the agreement, Miller acted in good faith and was prepared to close the transaction by the end of 2006. The court also finds that King was doing nearly everything possible to avoid a closing. The court finds the testimony of King's former attorney to be persuasive on this

5

point. As is noted above, King improperly attempted to contaminate the appraisal process by providing Suminsby with information that was not to be disclosed to him. King went so far as discussing with his attorney a plan to threaten legal action against Suminsby in an attempt to force him to withdraw as the appraiser. King testified that he abandoned that plan on his attorney's advice. The court gives King little credit for not following through on an approach that is so plainly improper, even to a non-lawyer. Later on, King had direct contact with Miller and warned that his resources were sufficient to allow him to stall the process indefinitely. Prior to the time he was given leave to withdraw as King's attorney, counsel sent King a deed that he would hold in escrow. King received the deed but offered, in his attorney's words, "excuse after excuse" why he failed to return the signed instrument to his lawyer. King's attorney, prior to his withdrawal, also expressed concern to Wheatley about whether King would honor the contract even if he (King) gave a closing date outside of the 30-day deadline established in the contract. *See* plaintiff's exhibit 5 at p. D-9. Further, as late as March, King added another condition of performance by insisting on production of proof that Miller had deposited sufficient funds with Wheatley's firm's trust account to cover the purchase price. Wheatley's staff provided that proof, even though Miller was not obligated to provide that information.

The evidence clearly demonstrates that King did not wish to go through with the closing because of his dissatisfaction with the purchase price. Although several times he suggested in emails that he wanted to close, his conduct belies that interest. He continued to raise new issues and conditions; he failed to provide information that was expected of him; and he never did select a settlement agent, which constituted a complete barrier to the closing process. As he expressed to his attorney and to the court during the hearing on the motions at bar, he felt that Miller was "stealing" the property from him (even though the purchase price was determined by a formula to which he (King) agreed), and it is evident that King sought to defeat the transaction.

From this evidence and these findings, the court concludes that Miller was not materially responsible for any delay and that those delays are chargeable to King. King is therefore not relieved of his obligation to perform under the parties' settlement contact.

6

Accordingly, King shall deliver a deed for the subject premises to Miller within 30 days of the date of this order. Douglas Chapman, Esq. shall act as the closing agent. If King fails to tender a sufficient signed deed at the closing, Attorney Chapman is authorized to act in King's stead in all necessary respects pursuant to M.R.Civ. 70. The HUD settlement statement shall reflect the figures set out in plaintiff's exhibit 7 at p. C-20 and C-21, except that the interest owed by Miller shall accrue only through January 11, 2007, which is on or about the last day when the parties were to close under the agreement, and on which date Miller was substantially prepared to close; and except for the allocation of any balance that remains due to Suminsby for his appraisal.

Miller shall be awarded his costs of court and his disbursements incurred in this action. *See* 14 M.R.S. § 5940. His request for attorney's fees is denied because he has not shown the existence of some basis, either statutory or contractual, for an award of those fees.[4]

The entry shall be:

For the foregoing reasons, the plaintiff's motion for entry of judgment and relief under M.R.Civ.P. 70 is granted. The terms of that judgment and order are set out herein.

The defendant's motion to cancel the ADR agreement is denied.

Dated: October 5, 2007

_____
Justice, Maine Superior Court

FILED &
ENTERED

OCT 15 2007

SUPERIOR COURT
~ COUNTY

---

[4] The court does not treat the statutory references to "costs" and "disbursements" in section 5940 as authority for the court to award attorney's fees, when the Legislature has made specific reference to "counsel fees" in other provisions of the Maine Uniform Arbitration Act. *See, e.g.,* 14 M.R.S. § 5936.